IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH A. DEERING, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 09-03303-CV-S-JTM |
| EG&G TECHNICAL SERVICES, INC., a subsidiary of UNITED RESEARCH SERVICES, INC., | ) ) ) ) ) |
| Defendant. | ) |

# ORDER

On July 9, 2007, plaintiff Joseph A. Deering ("Deering") was terminated by his employer EG&G Technical Services, Inc. ("EG&G"), the defendant herein. After unsuccessfully pursuing administrative relief, Deering filed the present action in federal court pursuant to Title VII of the Civil Rights Act of 1964. In this case, Deering alleges that his termination was done in retaliation for a previous discrimination complaint that he had pursued against EG&G. Presently pending before the Court is EG&G's MOTION FOR SUMMARY JUDGMENT [Doc. 29]. For the reasons set out briefly below, the Court grants the MOTION FOR SUMMARY JUDGMENT.

The parties are seemingly in agreement that there is no direct evidence of illegal retaliation; instead, Deering is relying on circumstantial evidence to establish the viability of his claim. As such the summary judgment analysis for Deering's retaliation claim is derived from the seminal Supreme Court decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973). *Lewis v. Heratland Inns of America, L.L.C.*, 591 F.3d 1033, 1042 (8th Cir. 2010) (applying *McDonnell Douglas* to retaliation claims).

1

Under the *McDonnell Douglas* framework,[1] Deering is required initially to establish a *prima facie* case of retaliation. *Id.* Such a *prima facie* case of retaliation requires an affirmative showing by an employee that:

  (1)  the employee engaged in protected conduct;

  (2)  a reasonable employee would have found the challenged retaliatory action by the employer to be materially adverse; and

  (3)  the materially adverse action was causally linked to the employee's protected conduct.

*Brenneman v. Famous Dave's of America, Inc.*, 507 F.3d 1139, 1146 (8th Cir. 2007). Upon a *prima facie* showing by an employee, "a presumption of retaliation arises, and the burden of production shifts to the employer to advance a legitimate reason for the employment action." *Hughes v. Stottlemyre*, 506 F.3d 675, 679 (8th Cir. 2007). If the employer does advance such a reason, then "the presumption drops out and 'the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven that the defendant intentionally discriminated against the plaintiff.'" *Id*. (*quoting Ryther v. KARE 11*, 108 F.3d 832, 836 (8th Cir. 1997) (*en banc*)). However, "[t]he ultimate burden of persuasion remains with the employee to show the adverse employment action was motivated by intentional retaliation." *Id*.

---

[1] *McDonnell Douglas* was decided under Title VII of the Civil Rights Act of 1964. However, its analytical framework is also used in cases (like the present one) where a plaintiff alleges retaliation under Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq*. ("ADEA"). *See*, *e.g.*, *Calder v. TCI Cablevision of Missouri, Inc.*, 298 F.3d 723, 731 (8th Cir. 2002).

With regard to the first step in the *McDonnell Douglas* analysis, EG&G concedes that Deering engaged in a protected activity when he filed an age discrimination charge with the Equal Employment Opportunity Commission on March 13, 2006.[2] Moreover, there can be no dispute that Deering's termination on July 9, 2007, was materially adverse. However, EG&G does assert that there is no evidence of a causal connection between these two events – particularly in light of the sixteen-month lapse of time between the two events. *See*, *e.g.*, Van Horn v. Best Buy Stores, L.P. 526 F.3d 1144, 1149 (8th Cir. 2008) ("Although not dispositive, the time lapse between an employee's protected activity and the employer's adverse action is an important factor when evaluating whether a causal connection has been established."). In this regard, the Eighth Circuit has noted:

> Although we have recently discussed the difficulty of placing too much reliance on timing as evidence of causation, it remains clear that a gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive, and that, given a delay of sufficient length, the causal nexus tends to evaporate.

*Stewart v. Independent School District No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007) (*citations and internal punctuation omitted*). In *Stewart*, the court decided that a six-month lapse of time failed to establish a causal connection. *Id.* *See also* Henderson v. Ford Motor Co., 403 F.3d 1026, 1036 (8th Cir. 2005) ("[The plaintiff's] protected activities undertaken more than two years prior to the adverse employment action are too separated in time to raise any inference of the requisite causal relationship"); *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir. 2001) ("the seven-month time lapse between the protected activity and the alleged retaliatory act is, without more, too long for the incidents to be temporally – and therefore causally-related").

---

[2] The 2006 age discrimination charge apparently went no further than the initial administrative complaint.

3

In response, Deering argues that other actions occurred between the filing of ADEA charge and his termination that establish a causal connection. Specifically, Deering alleges that after he filed his ADEA charge he was excluded from certain types of decision-making in which he had previously participated (*e.g.*, hiring decisions, employee job assignments). Deering also alleges – albeit vaguely – that the filing of his ADEA complaint continued to be "a live issue that was following him." Based on the summary judgment record presented, the Court cannot conclude that there is sufficient evidence of any causal connection between the 2006 ADEA charge and Deering's 2007 termination – even considering that "a minimal evidentiary showing" will satisfy the employee's burden of establishing a prima facie case of employment discrimination. *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850 (8th Cir. 2005). As such, the Court concludes that summary judgment in favor of EG&G is proper.

Moreover, even assuming that Deering could establish a *prima facie* case of retaliation, the Court alternatively finds that the *McDonnell Douglas* framework would also require summary judgment be granted to EG&G at the third stage of the analysis.

In articulating a legitimate nondiscriminatory reason at the second stage, the "burden on the [employer] is one of production, not persuasion." *Cherry v. Ritenour School District*, 361 F.3d 474, 478 (8th Cir. 2004). To that end, the burden to articulate a nondiscriminatory justification "is not onerous, and the showing need not be demonstrated by a preponderance of the evidence." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1052 (8th Cir. 2006). To satisfy this "minimal" burden, an employer need only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason" for the adverse employment action. *Klimczak v. Shoe Show Co.*, 420 F.Supp.2d 376, 383 (M.D. Pa. 2005). *See also St.*

4

*Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747 (1993) (*McDonnell Douglas* places a burden on employers only to produce "reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action").

Under this relaxed standard, EG&G easily meets its burden to articulate legitimate nondiscriminatory reasons for its termination of Deering. According to EG&G, Deering was terminated because:

(1)  he violated EG&G's Standard of Business Conduct Policy in that (a) he interfered with the work of other employees, (b) he demonstrated an unwillingness to work courteously and harmoniously with other employees, and (c) he willfully violated company-approved policies and procedures for accomplishing his work;

(2)  he supervised six employees who openly contributed (along with Deering himself) to a hostile work environment in violation of EG&G's harassment policy;

(3)  he supervised five employees who exhibited (along with Deering himself) hostility toward another employee who had complained to Human Resources thereby violating EG&G's policy against retaliation; and

(4)  he demonstrated continuing anger management issues in the workplace.

With EG&G having satisfied the second prong of the *McDonnell Douglas* framework, the burden of proving "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination" falls squarely on Deering. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 136, 120 S.Ct. 2097, 2106 (2000).

Initially, it should be noted that, with regard to the employment decision made by EG&G, the law is clear that "employers have wide latitude to make business decisions." *Lacroix v. Sears, Roebuck and Co.*, 240 F.3d 688, 692 (8th Cir. 2001). Thus, when an employer articulates a reason for terminating a particular employee, it is not a federal court's "province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason." *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998).

In his summary judgment pleadings in this case, Deering raises one primary argument in response to EG&G's stated nondiscriminatory reasons for terminating his employment: Deering "believes" that EG&G seized upon the complaints of one of his subordinates to orchestrate his removal. The exact details of these complaints are immaterial (although both parties devote considerable effort to recounting the tale). Accepting Deering's version, it is undisputed that:

(1) Deering had a dispute with one of his subordinate team members,

(2) The disgruntled team member complained to Human Resources at EG&G;

(3) EG&G treated the complaint as a hostile work environment charge,

(4) During the ensuing investigation, the disgruntled team member complained that she was being picked on by the other team members (and Deering),

(5) The other team members denied the allegations,

(6) The investigation nonetheless concluded that Deering was to blame for the perpetuation of the hostile work environment.

(7) This investigation ultimately led to Deering's termination.

In an effort to show that this reason for his termination was "invalid," Deering argues that he did not learn of the full reasons for his termination until the discovery in this case, and the primary decisionmaker made no notes of her meeting terminating Deering. Neither of these reasons is sufficient to establish pretext.

Deering more extensively argues that five of his team members did not find the workplace hostile, but, of course, this was the whole point of the EG&G investigation. Five team members were harassing one team member. Deering offers no evidence or competent argument to suggest that the disgruntled one team member did not subjectively feel harassed. In this case, the EG&G investigation sided with the one employee. Deering disagrees with that conclusion. Indeed, perhaps other factfinders would also disagree with EG&G's conclusion or find that its punishment of Deering was too harsh, but that does not establish pretext. As bluntly put by the Eighth Circuit, when federal courts examine an employer's articulated reasons, they "do not sit as super-personnel departments to second-guess the business decisions of employers [rather] the threshold question is . . . whether [the employer's] reasons for its employment actions are true, not if they are wise, fair, or correct." *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 837 (8th Cir. 2002).

Simply put, Deering has offered no evidence to raise a trialworthy issue pretext. With regard to Deering "beliefs," no matter how subjectively honest, they plainly cannot establish a case of pretext. Deering "must do more than simply create a factual dispute as to the issue of pretext; [he] must offer sufficient evidence for a reasonable trier of fact to infer discrimination." *Matthews v. Trilogy Communications, Inc.,* 143 F.3d 1160, 1165 (8th Cir. 1998). To that end, Deering cannot avoid summary judgment by merely arguing that he "thinks" or "believes" or

"feels" that retaliation was the real motivation underlying his termination by EG&G. *Grimes v. United States Postal Service*, 872 F.Supp. 668, 673 (W.D. Mo. 1994), *aff'd*, 74 F.3d 1243 (8th Cir. 1996). Ultimately, Deering is obligated to come forward with "significant probative evidence" indicating that the reasons put forward by EG&G for Deering's termination are mere cover to hide illegal retaliation. *Buettner v. Arch Coal Sales, Inc.*, 216 F.3d 707, 718 (8th Cir. 2000). In the complete absence of such evidence, EG&G's stated nondiscriminatory reasons must stand and the Court should enter summary judgment in favor of EG&G on Deering's claim of illegal retaliation. For the foregoing reasons, it is

**ORDERED** that EG&G's MOTION FOR SUMMARY JUDGMENT, filed November 24, 2010 [Doc. 29] is **GRANTED**.

*/s/ John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**